## DeVirgiliis v. Gordon

*Michael Goldman*, for plaintiffs.

*Albert C. Gekoski* and *Charles J. Bogdanoff*, for defendants.

SLOANE, P. J., May 2, 1968.—I did write and file an adjudication but I cannot find it in the record, printed by defendant-appellant, before the Superior Court, so I attach it here and write further as a supplement to my adjudication:

This action in trespass arose out of an accident on January 11, 1965, involving an automobile driven by plaintiff, Edith DeVirgiliis (hereinafter referred to as plaintiff-wife) and defendant, Howard J. Gordon. The accident occurred on Malvern Avenue in Philadelphia.

After a trial without a jury, I wrote an adjudication and entered a verdict of $10,000 for plaintiff-wife, and a verdict of $2,000 for plaintiff-husband. Defendant filed exceptions which were argued before a court en banc, Judge Ullman and me. Defendant's exceptions were dismissed in whole; judgments were entered on the two verdicts.

There is no debate on liability. There would appear to be no debate as to the husband's verdict. Defendant's argument is the wife's verdict.

As a result of the impact, plaintiff-wife's nose, mouth and ribs came in contact with the steering wheel

of her car. She bled profusely from her nose and mouth; her mouth was numb. She had excruciating pain in her ribs, two of which were broken. She had trouble breathing. Her left arm banged into the car door and was cut. The following day her eyes were blackened; her nose was swollen and her ribs were sore and painful; her teeth were loose and sore. Plaintiff-wife wore a belt for three or four months. But most grievous of all was: plaintiff-wife had to have her last six natural teeth extracted (she wore a full upper denture).

At the time of trial, over two years after the accident, plaintiff-wife was still affected by the injuries. She is limited in her household chores, her shopping; she has trouble climbing stairs. Plaintiff-wife cannot eat meat, steak or chops because of trouble with her teeth and mouth.

There is no question in our mind (court en banc) that, as a result of the accident, plaintiff-wife sustained extensive injuries to her mouth and ribs which caused extensive pain and affected her everyday life up to the time of trial and thereafter.

Defendant complains that the testimony of Dr. Egoville, a prosthodontist, who treated plaintiff-wife some 18 months after the accident, was improperly admitted into evidence and improperly considered by me as the trial judge in reaching plaintiff-wife's verdict. Defendant claims that Dr. Egoville did not relate properly the treatment he gave plaintiff-wife to the accident.

Plaintiff-wife testified that after the accident her husband, himself a dentist, treated her extensively for several months. Eventually six natural teeth had to be pulled, they were pulled and she was fitted with a full lower denture. Over a year after the accident, July of 1966, she began to experience sore spots and blisters

in her mouth. She had experienced the same phenomenon right after the accident but the sore spots and blisters had gone away after awhile only to reappear as stated. This was accompanied by tender and inflamed gums.

Thus it was that plaintiff-husband, Dr. DeVirgiliis, suggested he get another professional opinion for Mrs. DeVirgiliis' treatment; they went to see Dr. Egoville, a specialist, (prosthodontist) who then took charge of plaintiff-wife's dental care. Dr. Egoville eventually fitted plaintiff-wife with two sets of dentures, upper and lower.

Defendant claims that nowhere in his testimony did Dr. Egoville say that the condition for which he was treating her was caused by the accident of January 11, 1965. Defendant claims this is a fatal defect in the testimony of Dr. Egoville. To us the relationship was obvious. Dr. DeVirgiliis carefully outlined the immediate effects of the accident on his wife's teeth. Undisputedly, plaintiff-wife, as a result of the accident, was left with no natural teeth. Dr. DeVirgiliis' efforts to fit his wife with dentures met only with tiny success. They decided to consult another dentist, Dr. Egoville, admittedly an expert, a prosthodontist. The problem was to fit plaintiff-wife with dentures. Dr. Egoville's testimony concerned that process. He told how he fitted plaintiff-wife with dentures. When natural teeth go, the gums, bones and tissues of the mouth change. These changes may necessitate fitting a patient with more than one set of dentures over a period of time. As these changes took place in plaintiff-wife's mouth, Dr. Egoville fitted her with a second set of dentures. His treatment was the natural, necessary, indeed the obvious consequence of the accident which a trier of fact was able to conclude upon without the help of expert testimony. Simply stated, we found that the accident was the proximate cause of the loss of plain-

tiff-wife's teeth; Dr. Egoville's services were needed in the course of restoring plaintiff-wife's mouth with dentures. Dr. Egoville was consulted for his expert opinion and assistance, all for the purpose of fitting plaintiff-wife with dentures. There is nothing medically mysterious about the treatment of Dr. Egoville. Dr. DeVirgiliis' testimony clearly established the need for Dr. Egoville. We dismissed this objection to the testimony of Dr. Egoville as being a misapprehension of the thrust and importance of the testimony. Dr. Egoville did no more than treat plaintiff-wife's edentulous condition.

Defendant's second objection to Dr. Egoville's testimony is that plaintiffs in response to written interrogatories never informed defendant that plaintiff-wife was being treated by Dr. Egoville. Plaintiffs' answer was that when the answers to written interrogatories were given to defendant in June of 1966, plaintiff-wife had not yet begun to see Dr. Egoville. Defendant's contention is that the interrogatories are continuing in nature. At trial, I asked defendant if he wanted additional time to bring in an expert prosthodontist or to review the testimony and records of Dr. Egoville and testify on defendant's behalf. Defendant declined to take advantage of this offer. Defendant contends simply that he was prejudiced by not being told earlier that Dr. Egoville was treating plaintiff-wife. How defendant was prejudiced I cannot even surmise; defendant failed to take advantage of my offer, contenting himself with the groundless claim that he was prejudiced by the delayed knowledge and that at trial it was too late. Defendant claims that it was too late effectively to examine plaintiff-wife. These bare assertions by defendant are unavailing. If defendant had produced an expert who testified that he was unable to make certain crucial determinations because it was too late after the fact, then defendant's

claim might have merit. But, in the absence of such a showing, defendant's claim of prejudice is thin air.

Considering the extent of the injuries here suffered by plaintiff-wife and their continuing nature, the verdict in her favor was quite reasonable.